**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE SOTO, CHRISTINE EXELBY, and TANNER EASTMAN, individually and on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| | | Case No.  15-cv-04768 |
| Plaintiffs, | ) ) ) | Judge Matthew F. Kennelly |
| v. | ) ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| SKY UNION, LLC (d/b/a IGG.com), a Nevada limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

David S. Almeida, Esq.
dalmeida@sheppardmullin.com
David M. Poell, Esq.
dpoell@sheppardmullin.com
Mark S. Eisen, Esq.
meisen@sheppardmull.com
**SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois  60602
Telephone:  (312) 499-6300
Facsimile:  (312) 499-6301

*Counsel for Sky Union, LLC*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 4

I.      Castle Clash. .................................................................................................................. 4

        A.      Gems, Heroes and Talents. .............................................................................. 4

        B.      The Secondary Market for Castle Clash Accounts. ........................................ 5

II.     Plaintiffs' Allegations & Claims. ................................................................................ 5

LEGAL STANDARD ............................................................................................................. 6

DISCUSSION ......................................................................................................................... 7

I.      Castle Clash Involves Neither Wagering Anything of Value Nor the Ability to Win
        Anything of Value, and Therefore Is Not Gambling. .................................................. 7

II.     Plaintiffs' Damages Were Not Proximately Caused by Sky Union's Alleged Unlawful
        Gambling Activities. ................................................................................................... 10

III.    Plaintiffs' California Penal Code Claims Have no Private Right of Action and, in any
        Event, Fail on Their Own Terms. .............................................................................. 11

        A.      Cal. Penal Code §§ 330b & 319 Do Not Provide for Private Rights of Action ...... 11

        B.      The Castle Clash In-App Games Are Not Slot Machines. ............................. 12

        C.      Castle Clash In-App Events Are Not Illegal Lotteries As Players Do Not  Have Any
                Right to Obtain Property by Playing. ............................................................ 14

IV.     Plaintiff Soto's Illinois LRA Claim Fails as a Matter of Law Because He Did Not Lose
        Anything of Value, Sky Union Is Not a "Winner" of the Alleged Gambling Transaction nor
        Is Soto a "Loser." ...................................................................................................... 15

V.      Plaintiff Soto Never Suffered a Loss and Has Not Alleged an Intentional Violation of the
        Illinois Prizes Act....................................................................................................... 18

VI.     Plaintiff Exelby Lacks Standing to Pursue Her Claim Under the Michigan Loss Recovery
        Act, Which Has Been Superseded by Recent Michigan Law. ..................................... 20

VII.    Plaintiffs Cannot State a UCL or ICFA Claim Because They Received the Full Benefit of
        Their Bargain. ............................................................................................................ 21

VIII. Soto's and Exelby's Unjust Enrichment Claims Are Superfluous and in any Event Fail as They Received the Full Benefit of Their Bargain. ............................................................... 24

CONCLUSION ............................................................................................................................ 25

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Alston v. Advanced Brands & Importing Company*,
No. 05-72629, 2006 WL 1374514 (E.D. Mich. May 19, 2006) ...........................................25

*In re Apple & AT&T iPad Unlimited Data Plan Litigation*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ..................................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................6

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996)................................................................................................................11

*Bonaparte v. Tax Court*,
104 U.S. 592 (1881)................................................................................................................11

*Brazil v. Dole Food Company*,
935 F. Supp. 2d 947 (N.D. Cal. 2013) ...................................................................................25

*Chaset v. Fleer/Skybox International*,
300 F.3d 1083 (9th Cir. 2002) ...............................................................................................19

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ..................................................................................................25

*Comet Theatre Enterprises, Inc. v. Cartwright*,
195 F.2d 80 (9th Cir. 1952) ...................................................................................................25

*Ellis v. City of San Diego*,
176 F.3d 1183 (9th Cir. 1999) ...............................................................................................12

*Fahrner v. Tiltware LLC*,
No. 13-0227, 2015 WL 1379347 (S.D. Ill. Mar. 24, 2015) ........................................16, 17, 18

*FDIC v. Saphir*,
No. 10 C 7009, 2011 WL 3876918 (N.D. Ill. Sept. 1, 2011)..................................................25

*Frye v. L'Oreal, Inc.*,
583 F. Supp. 2d 954 (N.D. Ill. 2008) ...............................................................................23, 24

*George v. National Collegiate Athletic Association*,
439 F. App'x 544 (7th Cir. 2011) ..........................................................................9

*George v. National Collegiate Athletic Association*,
945 N.E.2d 150 (Ind. 2011) ...............................................................................9

*Germain v. J.C. Penney Company*,
No. 09-cv-2847, 2009 WL 1971336 (C.D. Cal. July 6, 2009).................................24

*Hall v. Time Inc.*,
158 Cal. App. 4th 847 (2008) ..............................................................................22

*Haskell v. Time, Inc.*,
965 F. Supp. 1398 (E.D. Cal. 1997)......................................................................14

*Holmes v. Brickey*,
335 Ill. App. 390 (3d Dist. 1948).........................................................................16

*Holmes v. Securities Investor Protection Corporation*,
503 U.S. 258 (1992)..........................................................................................10

*Hotel Employees & Restaurant Employees International Union v. Davis*,
21 Cal. 4th 585 (1999) ..................................................................................8, 15

*Humphrey v. Viacom, Inc.*,
No. 06-2768, 2007 WL 1797648 (D.N.J. June 20, 2007).......................................17

*Ingels v. Westwood One Broadcasting Services, Inc.*,
129 Cal. App. 4th 1050 (2005) ............................................................................22

*Jamison v. First Credit Services, Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013)..........................................................................6, 2

*Johnson v. Mitsubishi Digital Electronics America, Inc.*,
365 F. App'x 830 (9th Cir. 2010) .........................................................................22

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ..........................................................................22, 23

*Kim v. Riscuity, Inc.*,
No. 06-1585, 2006 WL 2192121 (N.D. Ill. July 31, 2006) .....................................22

*Koh v. S.C. Johnson & Son, Inc.*,
No. 09-00927, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010).......................................23

*Kraft v. Detroit Entertainment, L.L.C.*,
261 Mich. App. 534 (2004) .................................................................................20

*Laborers' Pension Fund v. Blackmore Sewer Construction, Inc.,*
298 F.3d 600 (7th Cir. 2002) ................................................................5

*Langone v. Kaiser,*
2013 WL 5567587, (N.D. Ill. Oct. 9, 2013)............................16, 17, 18

*Lary v. Trinity Physician Financial & Insurance Services,*
780 F.3d 1101 (11th Cir. 2015) .........................................................19

*Lucky Bob's Internet Cafe, LLC v. California Department of Justice,*
No. 11-cv-148, 2013 WL 1849270 (S.D. Cal. May 1, 2013) ................14

*Manning v. Creative Headquarters, LLC,*
No. 11-2203, DE 83 (N.D. Ill. Mar. 30, 2012) ...................................17

*Martin v. Heinold Communications, Inc.,*
163 Ill. 2d 33 (1994) ........................................................................10

*In re MasterCard International Inc.,*
313 F.3d 257 (5th Cir. 2002) ..........................................10, 11, 20, 23

*McEntee v. Incredible Technologies, Inc.,*
No. 263818, 2006 WL 659347 (Mich. Ct. App. Mar. 16, 2006)...........21

*McVeigh v. Burger King Corporation,*
No. B220964, 2010 WL 4056857 (Cal. Ct. App. Oct. 18, 2010) ..........13

*Mulligan v. QVC, Inc.,*
382 Ill. App. 3d 620 (1st Dist. 2008) ................................................24

*Northern Trust Company v. Peters,*
69 F.3d 123 (7th Cir. 1995) ...............................................................7

*Oppenheimer v. Clifton's Brookdale,*
98 Cal. App. 2d 403 (1950) ..............................................................12

*Oshana v. Coca-Cola Company,*
472 F.3d 506 (7th Cir. 2006) ..............................................................6

*People ex rel. Lockyer v. Pacific Gaming Technologies,*
82 Cal. App. 4th 699 (2000). ............................................................13

*Pankros v. Tyler,*
401 Ill. App. 3d 936 (1st Dist. 2010) .................................................11

*Parise v. Detroit Entertainment, LLC,*
295 Mich. App. 25 (2011) .................................................................20

*Pearce v. Foote,*
    113 Ill. 228 (Ill. 1885) ........................................................................................17

*People ex rel. Green v. Grewal,*
    -- P.3d --, 2015 WL 3893494 (Cal. June 25, 2015) ........................................8, 13

*People v. Kroncke,*
    70 Cal. App. 4th 1535 (1999) ...........................................................................14

*People v. One Mechanical Device,*
    11 Ill. 2d 151 (1957) ...........................................................................................8

*Peterson v. Cellco Partnership,*
    164 Cal. App. 4th 1583 (2008) ....................................................................21, 22

*Reuter v. MasterCard International, Inc.,*
    397 Ill. App. 3d 915 (5th Dist. 2010)...................................................11, 17, 20

*Rubio v. Capital One Bank,*
    613 F.3d 1195 (9th Cir. 2010) .....................................................................21, 22

*Rush Presbyterian St. Luke's Medical Center v. Safeco Insurance Company of America,*
    712 F. Supp. 1344 (N.D. Ill. 1989) ....................................................................7

*Schaefer v. Williams,*
    15 Cal. App. 4th 1243 (1993) ...........................................................................12

*Schlessinger v. The Chicago Housing Authority,*
    No. 12 C 3733, 2013 WL 5497254 (N.D. Ill. Oct. 2, 2013) ................................4

*Sohal v. City of Merced Police Department,*
    No. CV 09-0160, 2009 WL 961465 (E.D. Cal. Apr. 8, 2009) .............................11

*Sonnenberg v. Oldford Group, Ltd.,*
    No. 13-0344, 2015 WL 1379505 (S.D. Ill. Mar. 24, 2015) .............................17, 18

*Sonnenberg v. Oldford Group, Ltd.,*
    No. 13-0344, 2014 WL 1017898 (S.D. Ill. Mar. 14, 2014) ......................15, 16, 17

*Thrasher-Lyon v. Illinois Farmers Insurance Company,*
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ................................................................22

*Thulin v. Shopko Stores Operating Company, LLC,*
    771 F.3d 994 (7th Cir. 2014) .............................................................................6

*Tillman v. Smith & Nephew, Inc.,*
    No. 12 C 4977, 2012 WL 6681698 (N.D. Ill. Nov. 1, 2012)...............................9

*Trinkle v. California State Lottery,*
105 Cal. App. 4th 1401 (2003) ...............................................................12, 14

*United States v. Bryza,*
522 F.2d 414 (7th Cir. 1975) .........................................................................24

*United States v. Logan,*
453 F.3d 804 (7th Cir. 2006) .........................................................................19

*Vinson v. Casino Queen, Inc.,*
123 F.3d 655 (7th Cir. 1997) ...................................................................15, 16

*Volpe v. Caribbean Cruise Line, Inc.,*
No. 13 C 1646, 2013 WL 3724858 (N.D. Ill. July 16, 2013) ................18

*Western Telcon, Inc. v. California State Lottery,*
13 Cal. 4th 475 (1996) ...................................................................................15

*Yeftich v. Navistar, Inc.,*
722 F.3d 911 (7th Cir. 2013) .........................................................................19

**<u>Statutes</u>**

720 ILCS 5/28-1 ..........................................................................................................8

720 ILCS 5/28-8 ............................................................................................... *passim.*

815 ILCS 505/2 ..........................................................................................................22

815 ILCS 520/15(a) ...................................................................................................19

815 ILCS 525/10 ...............................................................................................8, 18, 19

815 ILCS 525/40 ............................................................................................... *passim.*

815 ILCS § 505/1 ....................................................................................................1, 6

Cal. Bus. & Prof. Code § 17200 ..............................................................................1, 6

Cal. Bus. & Prof. Code § 17204 ................................................................................21

Cal. Penal Code § 319.................................................................................. *passim.*

Cal. Penal Code § 320..................................................................................................12

Cal. Penal Code § 321..................................................................................................12

Cal. Penal Code § 322..................................................................................................12

Cal. Penal Code § 330b............................................................................................ *passim.*

MCL 600.2939(1) ..................................................................................................20

MCL § 432.203 ......................................................................................................20

MCL § 432.204a(1) ................................................................................................20

MCL § 600.2939 ............................................................................................ *passim.*

MCL § 750.303a ................................................................................................8, 20

MCL § 750.315 ......................................................................................................21

## **Other Authorities**

3A Gillespie Mich. Crim. L. & Proc. § 87:1.......................................................8, 20

66 Cal. Op. Att'y Gen. 276 (1983) .......................................................................14

Sky Union, LLC respectfully submits this Memorandum of Law in Support of its Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to Dismiss the First Amended Class Action Complaint for failure to state a claim for which relief can be granted.

## PRELIMINARY STATEMENT

Castle Clash, the mobile game at the heart of Plaintiffs' Complaint, is a free-to-download and free-to-play civilization building strategy game where players use a fictional currency (gems) to build cities and armies. Castle Clash is and always has been absolutely free to play. In fact, every player begins the game with a free allotment of gems and can periodically earn free gems through standard gameplay. Players may choose to purchase additional gems in order to progress through the game at a faster pace than in standard gameplay, to improve their cities and/or build up their army. Players can also choose to use their free or purchased gems to participate in in-app games and events to win "heroes" and "talents" to bolster their armies.

Plaintiffs are three individuals who allegedly downloaded Castle Clash and purchased gems and used them to win in-game heroes and talents. On the basis of innocuous videogame play—*i.e.*, using fictional gems to advance a virtual army—Plaintiffs assert a number of ill-fitting statutory and common law claims. Specifically, Plaintiffs bring claims under various slot machine and lottery laws of California (Cal. Penal Code §§ 330b and 319 and Cal. Bus. & Prof. Code § 17200), Illinois (720 ILCS 5/28-8(a), 815 ILCS 525/40 and 815 ILCS § 505/1) and Michigan (MCL § 600.2939) (collectively, the "anti-gaming claims"). Plaintiffs Soto and Exelby also assert claims for unjust enrichment under the laws of Illinois and Michigan, respectively. Plaintiffs assert these claims on behalf of a nationwide class and various sub-classes.[1] Plaintiffs' attempt to transform videogames into illegal gambling should be rejected.

---

[1] Plaintiffs' counsel, as they have done with numerous dated statutes (*e.g.*, the Video Privacy Protection Act), is attempting to shoehorn modern technology into statutes that were not

<u>First</u> and foremost, Castle Clash is *not* gambling. It is axiomatic that gambling does not occur where players have no opportunity to wager nor win anything of value. Plaintiffs' anti-gaming claims are based on the notion that Castle Clash players wagered items of value (gems) and/or could win items of value (heroes and talents). Gems, heroes and talents are fictional items that cannot be removed from the game (*i.e.*, cashed-out). Players cannot take ownership of gems, heroes or talents. In short, gems, heroes and talents have no "value." Put another way, Castle Clash does not violate the anti-gaming laws because while consumers can download the free game and make the decision to purchase and to use additional gems, they cannot subsequently redeem the gems for more (or less) money, *as is the case with actual gambling*.

Recognizing that users cannot "cash out," Plaintiffs try to avoid the common sense and inescapable conclusion that Castle Clash is not gambling by asserting that—while the game itself does not allow players to cash-out gems, heroes or talents—an unsanctioned secondary market has developed whereby users may attempt to sell their accounts. Plaintiffs make no allegation that Castle Clash sanctions, endorses or condones any secondary market, nor do they allege that they sold or attempted to sell their accounts. Nor does Plaintiffs' counsel mention that the selling of Castle Clash accounts is strictly prohibited by the Castle Clash Terms of Service.

<u>Second</u>, Plaintiffs' claims are based on the misguided notion that playing Castle Clash caused Plaintiffs to lose money. Even accepting their strained characterization of the in-app games, "wagering" gems could not have caused Plaintiffs any monetary harm. Plaintiffs purchased gems, at which point their monetary transaction was complete, as the gems could never be exchanged back for cash. Plaintiffs' contention that using the gems to "wager" in in-

---

designed to address such situations. In addition to Sky Union, Plaintiffs' counsel have filed similar class claims against Double Down Interactive, Machine Zone, Inc., Churchill Downs, Inc. and Playtika Santa Monica, LLC in an effort to portray videogames as illegal slot machines and lotteries. Simply put, these laws do not apply to the alleged conduct and games at issue.

app games to win heroes and talents somehow caused them to lose money is false. Once purchased, any subsequent use of gems—whether to accelerate gameplay, fortify a city or attempt to win heroes or talents—could not cause Plaintiffs to lose any money above and beyond the money spent purchasing gems. Plaintiffs, however, do not challenge the legality of purchasing gems, nor could they; purchasing gems is no different in kind from purchasing the game outright.

Third, Plaintiffs' claims for violation of California's anti-slot machine and anti-lottery laws fail as a matter of law because those statutes do not provide for private rights of action. That aside, Plaintiffs' effort to portray Castle Clash as a slot machine and lottery game is nonsensical. California law requires, *inter alia*, the insertion of money to operate a slot machine and the distribution of valuable property to constitute a lottery. Gems (which operate the in-app games) are plainly not money and can never be cashed out, nor are heroes and talents (the purported lottery prizes) valuable property.

Fourth, the Illinois anti-gaming claims—pursued only by Plaintiff Soto—fail as well. Claims pursuant to 720 ILCS 5/28-8(a) (the Illinois Loss Recovery Act) can only be pursued by the loser of a wager against the winner of that wager. Under controlling Illinois law, the facilitator of a given game—who has no interest in the outcome of a given "wager"—is not a winner under the statute. Additionally, 815 ILCS 525/40 (the Illinois Prizes and Gifts Act), which prohibits lottery games where purchase is necessary to participate, provides a private right of action for persons who suffer a *loss* due to an *intentional violation* of the statute. Plaintiff Soto never alleges he suffered a loss, let alone one caused by an intentional violation.

Fifth, the Michigan Loss Recovery claim—pursued only by Plaintiff Exelby is preempted by the Michigan Gaming Control and Revenue Act, and thus Plaintiff Exelby lacks standing to pursue that claim.

-3-

<u>Sixth</u> and finally, Plaintiffs' unlawful competition and unjust enrichment claims are premised on the flawed logic that Plaintiffs somehow received less than what they bargained for. Plaintiffs' anti-gaming claims are inadequate to prop up their unfair competition and unjust enrichment claims. Consumers that receive the full benefit of their bargain cannot seek restitution or damages. Here, Plaintiffs' received precisely what they wanted (gems) and used them exactly as they chose to (to enhance their in-game experience), and there is therefore no possible basis to assert Sky Union was unjustly enriched at Plaintiffs' expense.

Plaintiffs' attempt to transform such commonplace gameplay into illegal gambling should be denied. The Motion to Dismiss should be granted in its entirety.

## BACKGROUND

### I. CASTLE CLASH.[2]

Castle Clash is a mobile game available for download on Android and Apple mobile devices. (DE 14 ¶¶ 1, 21.) Castle Clash is a free to download and free to play strategy game that enables players to build virtual cities protected by virtual armies. (*Id.* ¶¶ 1, 2, 21.)

#### A. Gems, Heroes and Talents.

Castle Clash operates on a fictional currency—gems. (*See id.* ¶ 22.) Each player begins the game with free gems and can earn more for free by simply playing the game. (*See id.* ¶¶ 21, 21 n.10.) Players who want to obtain gems at a faster pace than via standard play may purchase more. (*Id.* ¶¶ 22, 23.) Gems (purchased or earned) can be used for in-game enhancements—*i.e.*,

---

[2] The Complaint begins with over three pages of boilerplate and irrelevant allegations. (*See, e.g.*, DE 14 ¶¶ 12-20.) These allegations, which concern mobile games generally, cites to numerous "videogame publications" and includes block quotes from socioeconomic academic studies, have nothing to do with Sky Union or Castle Clash, and should be disregarded. *See, e.g.*, *Schlessinger v. The Chicago Hous. Auth.*, No. 12 C 3733, 2013 WL 5497254, at *5 (N.D. Ill. Oct. 2, 2013) (disregarding portions of the complaint that were "boilerplate" and "irrelevant").

players can use gems to "improve their virtual towns," "speed up their progress in the game," or "reduce the time it takes to 'recruit troops' for virtual battles." (*Id.* ¶¶ 2, 23.)

There are many methods to obtain in-game specialty items like heroes and talents. Players periodically receive free heroes through gameplay or purchase them at the "hero shop." (*Id.* ¶ 27.) Players can also participate in in-app games and use free or purchased gems to win heroes and talents. (*Id.* ¶¶ 28-30, 32.) Players can also receive heroes and other items through in-app events, which events *do not* cause players to lose any gems. (*Id.* ¶¶ 39, 46, 47, 53.)

### B.    The Secondary Market for Castle Clash Accounts.

Plaintiffs allege a secondary market has developed where some Castle Clash players have supposedly tried to sell their accounts. (*Id.* ¶¶ 41-44.) Sky Union[3] is not alleged to sanction these secondary markets or to benefit from their operation. Nor could Plaintiffs plausibly make such an allegation as the Castle Clash Terms of Service specifically prohibit the sale of accounts:

> All [out-of-game] trading, sublicensing, renting, leasing, loaning, selling or transfers of Accounts, characters or Game Resource, including without limitation, trading of Account ID, Account Names, and all out-of-game transfers, are strictly prohibited. Further, any transactions in connection with the Game Resources or other Services amongst Users . . . for "real-world" payment or payment outside the Services is strictly prohibited.

(*See* Exhibit 1 ¶ 6.)[4] Plaintiffs do not allege they sold their accounts on a secondary market.

### II.    PLAINTIFFS' ALLEGATIONS & CLAIMS.

Plaintiffs assert they downloaded Castle Clash (for free) and each later decided to purchase gems. Plaintiffs each allege that they downloaded Castle Clash in 2013 and

---

[3]    Plaintiffs bring the instant action against Sky Union, a subsidiary of IGG, Inc. Sky Union does not design the Castle Clash game.

[4]    A true and accurate copy of the Castle Clash Terms of Service—readily available in the game itself and at http://www.igg.com/member/agreement.php—is attached as Exhibit A to the Declaration of Hong Zhang, attached hereto as **Exhibit 1**. Courts routinely take judicial notice of such documents where they are available online. *See, e.g.*, *Laborers' Pension Fund v. Blackmore Sewer Const., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002).

subsequently purchased an unspecified number of gems, which they used to obtain heroes and talents. (DE 14 ¶¶ 45, 48, 51.) Plaintiffs Soto and Exelby each also allege that they participated in in-app events to obtain in-game specialty items. (*Id.* ¶¶ 47, 53.)

Plaintiffs assert nine claims: (i) violation of Cal. Penal Code § 330b (on behalf of all Plaintiffs), (ii) violation of Cal. Penal Code § 319 (on behalf of all Plaintiffs), (iii) violation of Cal. Bus. & Prof. Code § 17200 (the "UCL") (on behalf of all Plaintiffs), (iv) violation of 720 ILCS 5/28-8 (the "Illinois LRA") (on behalf of Soto), (v) violation 815 ILCS 525/40 (the "Illinois Prizes Act") (on behalf of Soto), (vi) violation of 815 ILCS § 505/1 (the "ICFA") (on behalf of Soto), (vii) unjust enrichment (on behalf of Soto), (viii) violation of MCL § 600.2939 (the "Michigan LRA") (on behalf of Exelby) and (ix) unjust enrichment (on behalf of Exelby).

Plaintiffs seek to represent a class of all individuals that purchased gems in Castle Clash and subsequently used gems (either gems received for free or purchased) to attempt to win heroes and talents in in-app games. (*Id.* ¶ 54.) Plaintiffs Soto and Exelby also seek to represent various sub-classes predicated on their respective Illinois and Michigan state law claims. (*Id.*)[5]

## **LEGAL STANDARD**

Courts are required to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not "provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (quoting *Bell Atl. Corp. v.*

---

[5]     None of these classes is conceivably certifiable. Plaintiffs' classes require determining, *inter alia*, where each class member was *domiciled* (*i.e.*, residing with the *intent* to remain) at the time of a specific wager and includes many class members who may only have "wagered" free gems (and thus could not have been damaged). *See, e.g.*, *Simer v. Rios*, 661 F.2d 655, 673 (7th Cir. 1981) (finding class certification inappropriate where class membership was predicated on an "individual's state of mind"); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of certification where many class members "could not show any damage").

*Twombly*, 550 U.S. 544, 555, 570 (2007)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating whether a complaint states a plausible claim for relief, courts are instructed "to draw on [their] judicial experience and common sense." *Id.* With that in mind, while a court must accept well-pleaded facts, it need not accept "unsupported conclusions, unwarranted inferences, or allegations that are at odds with other allegations in the complaint." *Rush Pres. St. Luke's Med. Ctr. v. Safeco Ins. Co. of Am.*, 712 F. Supp. 1344, 1347 (N.D. Ill. 1989); *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995) (same).

## DISCUSSION

**I.  CASTLE CLASH INVOLVES NEITHER WAGERING ANYTHING OF VALUE NOR THE ABILITY TO WIN ANYTHING OF VALUE, AND THEREFORE IS NOT GAMBLING.**

The statutes underlying Plaintiffs' anti-gaming claims apply to games where players can wager and/or win items of value. *See* Cal. Penal Code § 330b(d) (requiring player wager money for the opportunity to win items of value); Cal. Penal Code § 319 (requiring valuable property be distributed as a prize); 720 ILCS 5/28-8(a) (requiring player have lost something worth at least $50); 815 ILCS 525/40(b) (requiring player have the chance to win an item of value); MCL § 600.2939 (requiring player have lost money/goods). Accordingly, if Plaintiffs neither wagered nor could win anything of value, the Castle Clash in-app games cannot constitute gambling.

Plaintiffs contend the Castle Clash in-app games permit the wagering and receipt of items of value because gems are used to win heroes and talents. (*See* DE 14 ¶¶ 65-67, 73, 89, 90-92, 99, 127 & 129.) Neither gems, heroes nor talents, however, are items of value. Gems, heroes and talents are fictional aspects of gameplay, which (i) remain part of Castle Clash, (ii) are never taken ownership of by players and (iii) can never be cashed-out. (*See* Ex. 1 ¶¶ 4c, 5b, 6, 7.)

Plaintiffs' theory stretches the anti-gaming statutes at issue far past their breaking point. Gems, heroes and talents have no "value" in the context of anti-gaming law (which was intended for *actual* gambling). California Penal Code § 330b, the Illinois LRA and the Michigan LRA, which prohibit slot machines, speak to situations where players can receive items of monetary value—not fictional, virtual videogame enhancements. *See, e.g.*, *People ex rel. Green v. Grewal*, -- P.3d --, 2015 WL 3893494, at *11 (Cal. June 25, 2015) (holding, under § 330b, a slot machine must award or entitle a player to "cash or other prizes of value"); *People v. One Mech. Device*, 11 Ill. 2d 151, 156 (1957) (holding, under the Illinois LRA, the "possibility of winning a greater or lesser amount of amusement" is not a "valuable thing"); 720 ILCS 5/28-8 (providing under the Illinois LRA a "sum of money or thing of value" must amount to "$50 or more"); MCL § 750.303a (defining "slot machine" as capable of distributing a "token or money or property"); 3A Gillespie Mich. Crim. L. & Proc. § 87:1 (defining "gambling" under Michigan law as where a "sum of money is at stake and which may be won or lost").

Similarly, Cal. Penal Code § 319 and the Illinois Prizes Act, which prohibit lottery games, encompass situations where players can win valuable property—not fictional pieces of gameplay over which players can never take ownership. *See, e.g.*, *Hotel Empl. & Rest. Empl Int'l Union v. Davis*, 21 Cal. 4th 585, 592 (1999) (finding "prize" under § 319 "encompasses property that the operator offers to distribute to one or more winning participants and not to keep for himself."); 815 ILCS 525/10 (defining "prize" to include an item "of value" that is "awarded").

For these reasons, the only state government entity to evaluate free-to-play mobile games determined they *are not* gambling. In 2013, the Washington State Gambling Commission concluded that games like Castle Clash are not unlawful gambling because virtual currency and virtual prizes *cannot* be converted into real money. Indeed, at a public hearing before the

Commission, it was explained that the fictional items "do[] not really exist; [they] . . . ha[ve] no redeemable value," and the winning of such items is no different than winning "endorphins."[6]

Recognizing fictional items like gems and heroes cannot be cashed-out, Plaintiffs adopt the theory that gems, heroes and talents are items of value because an alleged secondary market has developed where some players can sell their accounts.  (*See* DE 14 ¶¶ 41-44.)  No Plaintiff alleges they *actually sold*, wanted to sell or could sell their account, or that Sky Union could conceivably benefit from any such secondary market (it cannot).  In fact, Sky Union prohibits selling accounts for any real-world payment in the Terms of Service.  (*See* Ex. 1 ¶ 6.)

Further, the existence of a secondary market is irrelevant to whether "value" exists.  In an analogous case, the Indiana Supreme Court dismissed the existence of a secondary market as evidence of unlawful gaming.  *George v. Nat'l Collegiate Ath. Ass'n*, 945 N.E.2d 150, 159 (Ind. 2011) (answering questions certified by Seventh Circuit and subsequently adopted, *see George v. Nat'l Collegiate Ath. Ass'n*, 439 F. App'x 544 (7th Cir. 2011)).  *George* involved a class action stemming from the NCAA's Final Four ticket distribution.  Plaintiffs' counsel theorized that the distribution was an illegal lottery because consumers paid a fee for the chance to win tickets, which could be resold.  *Id.* at 152-59.  The Court determined "[t]he speculative nature of the secondary market makes it an inappropriate consideration" and "misleading."  *Id.* at 159. Indeed, if a secondary market could transform an item into a gambling, anything (*e.g.*, selling a free play received by chance playing Pac-man) could be converted into gambling.  Moreover, if Plaintiffs' theory were accepted, if a player sold their phone along with their account, Apple (and all component manufacturers) would be implicated in Plaintiffs' alleged gambling enterprise.

---

[6]     The Commission's official minutes and analysis are attached to the Declaration of David S. Almeida, attached hereto as **Exhibit 2**.  The language quoted above can be found at Ex. 2-A, p. 5.  The Court can consider official government documents on a motion to dismiss.  *See, e.g.*, *Tillman v. Smith & Nephew Inc.*, No. 12-4977, 2012 WL 6681698, at *1 (N.D. Ill. Nov. 1, 2012).

## II. PLAINTIFFS' DAMAGES WERE NOT PROXIMATELY CAUSED BY SKY UNION'S ALLEGED UNLAWFUL GAMBLING ACTIVITIES.

Apart from the fact that Plaintiffs *never engaged in gambling*, each of Plaintiffs' claims fails because they could not have lost *money* "wagering." Plaintiffs each allegedly purchased gems, at which point Plaintiffs' monetary transaction was complete and their gems could never be cashed out. Accordingly, what Plaintiffs later did with the those gems—whether accelerating the game, building their cities or "wagering"—cannot have caused them to lose any money.

It is hornbook law that unless a wrongful act is the proximate cause for a given harm, there can be no claim. *See, e.g.*, *Martin v. Heinold Comm., Inc.*, 163 Ill. 2d 33, 58 (1994) ("It is a fundamental principle . . . that in order to found a right of action there must be a wrongful act done and a loss resulting from that wrongful act . . . ."). It is further axiomatic that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 271 (1992) (internal quotations and citation omitted).

Plaintiffs' claims are based on the notion that they lost *money* attempting to win heroes and talents. (*See* DE 14 ¶¶ 69, 83, 96, 103, 116, 118, 134 & 140.) The alleged wagering of gems, however, cannot have caused any loss of money. Players may elect to purchase gems, at which point their monetary transaction is complete, and the gems can never be cashed out. (DE 14 ¶¶ 2, 22.) Accordingly, what players do with the gems to enhance their in-game experience cannot cause them to lose any money above and beyond the money *already* spent purchasing gems. Plaintiffs, however, *do not* challenge the purchase of gems in and of itself, nor could they. Purchasing in-game gems is no different in kind from simply buying the game outright.

A similar attempt to expand anti-gambling statutes to conduct they were not designed to address was rejected by the Fifth Circuit in *In re MasterCard International Inc.*, 313 F.3d 257 (5th Cir. 2002). There, plaintiffs sought to avoid credit card debts incurred purchasing chips

used to gamble online. *Id.* at 259. A consumer would visit a gaming site, use a credit card to buy credits and gamble with the credits. *Id.* at 260. The plaintiffs theorized that "[t]he credit card companies facilitate the [gambling] enterprise" by, *inter alia*, allowing casinos to accept credit cards and making credit available to gamblers, and thus violated anti-gaming laws. *Id.*

Reviewing an order granting the credit card companies' motion to dismiss, the Fifth Circuit held that "[b]ecause the Defendants completed their transaction with the Plaintiffs before any gambling occurred, that transaction cannot have [violated anti-gaming laws]." *Id.* at 262. In a recent case, the Illinois Fifth District agreed. *See Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 923 (5th Dist. 2010) (holding any obligation to repay credit card companies occurred *prior to* any alleged gambling and thus did not violate the Illinois LRA).

Similarly here, any money Plaintiffs allegedly spent occurred *prior to* any alleged gambling. The alleged gambling thus could not have proximately caused any injury. *See also Pankros v. Tyler*, 401 Ill. App. 3d 936, 945 (1st Dist. 2010) ("[P]laintiff's theory of causation extends beyond that 'first step' and thus, her injury is too remote to satisfy proximate cause.").

## III. PLAINTIFFS' CALIFORNIA PENAL CODE CLAIMS HAVE NO PRIVATE RIGHT OF ACTION AND, IN ANY EVENT, FAIL ON THEIR OWN TERMS.

### A. Cal. Penal Code §§ 330b & 319 Do Not Provide for Private Rights of Action.[7]

Neither of Plaintiffs' California Penal Code claims (Counts I and II) provide private rights of action, and should be dismissed. California courts "routinely dismiss claims based on violation of state criminal statutes where the language of the statute does not confer a private right of action." *Sohal v. City of Merced Police Dep't*, No. CV 09-0160, 2009 WL 961465, at *7

---

[7]     This is in addition to the obvious concern of applying the California Penal Code to non-California residents (Soto and Exelby) for harm allegedly suffered in Illinois and Michigan. (*See* DE 14 ¶¶ 95, 133.) Indeed, it is axiomatic that "[n]o State can legislate except with reference to its own jurisdiction . . . ." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996) (quoting *Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881)).

(E.D. Cal. Apr. 8, 2009); *Schaefer v. Williams*, 15 Cal. App. 4th 1243, 1248 (1993) ("[I]f the Legislature had intended to create such a private action, it would have done so by clear and direct language."). This holds true even where the claim seeks solely declaratory relief. *See, e.g.*, *Oppenheimer v. Clifton's Brookdale*, 98 Cal. App. 2d 403, 405 (1950) (affirming demurrer of complaint for declaratory relief that city officials violated the penal code).

Neither of Plaintiffs' California Penal Code sections confers a private right of action. Section 330b provides solely criminal penalties for violations (*i.e.*, fines and imprisonment), and does not provide for a private right of action. *See* Cal. Penal Code § 330b(e). Nor does Section § 319 or any of its related sections provide for a private right of action. *See* Cal. Penal Code §§ 320 (contriving a lottery is a misdemeanor), 321 (selling lottery tickets is a misdemeanor), 322 (aiding or assisting a lottery is a misdemeanor). Accordingly, Plaintiffs' California Penal Code claims should be dismissed with prejudice. *See also Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999) ("Because these [penal] code sections do not create enforceable individual rights, the district court properly dismissed the claims.").

## B. The Castle Clash In-App Games Are Not Slot Machines.

California Penal Code § 330b makes it unlawful to manufacture, possess or sell a "slot machine or device." Cal. Penal Code § 330b(a). "Slot machine or device" is defined to include:

> [A] machine, apparatus, or device that is adapted . . . for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance . . . the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value . . . .

Cal. Penal Code § 330b(d). To plead a violation of § 330b, Plaintiffs must allege "(1) the insertion of money or other object which causes the machine to operate, (2) the operation of the machine is . . . governed by chance, and (3) . . . the user may become entitled to receive a thing of value." *Trinkle v. California State Lottery*, 105 Cal. App. 4th 1401, 1410 (2003).

Plaintiffs contend the Castle Clash in-app games where players use gems to win heroes and talents constitute slot machines because players insert "money by electronic means" and are able to win "things of value by reason of chance." (DE 14 ¶¶ 63-69.) Plaintiffs' contention fails for two reasons. First, Castle Clash players cannot insert money *by any means* to play the in-app games. And second, players cannot win anything of value by playing such games.[8]

To begin, Plaintiffs' allegation that the Castle Clash in-app games involve "the insertion of money by electronic means" demonstrates the inapplicability of § 330b to Castle Clash, not to mention the absurdity of their claims. (DE 14 ¶ 65.)[9] To violate § 330b, "valuable consideration must be given" for the chance to play. *See, e.g.*, *McVeigh v. Burger King Corp.*, No. B220964, 2010 WL 4056857, at *6 (Cal. Ct. App. Oct. 18, 2010) (unpub.); *Grewal*, 2015 WL 3893494, at *12 (requiring some form of purchase). Castle Clash players do not "insert" anything to cause a "machine" to operate. Castle Clash is free to download and play. (*See* DE 14 ¶¶ 2, 21 n.10.) At best, Plaintiffs allege gems (which can be purchased or received free)—not money—are used to play in-app games. (*See id.* ¶ 65.) This is a far cry from inserting money by electronic means.

Additionally, players cannot receive anything of value in return for playing. The phrase "receive a thing of value" under § 330b is plainly intended to encompass situations where a player may win something of monetary value (*i.e.*, *actual* gambling). *See Grewal*, 2015 WL 3893494, at *11 (noting a slot machine must "award cash or other prizes of value"); *Pac. Gaming Tech.*, 82 Cal. App. 4th at 707 (noting machine was a slot machine because the player "may become entitled to receive prize money . . . and thereby receives more than the amount of

---

[8]     Additionally, § 330b exempts games that "are predominantly games of skill." Cal. Penal Code § 330b(f). There is little doubt Castle Clash—a strategy game based on building towns and armies (*see* DE 14 ¶ 1, 21-23)—is a game of skill. Plaintiffs' effort to isolate a discrete element of the game does not convert an overall game of skill into a game of chance.

[9]     This is in addition to the absurdity that would result if Plaintiffs prevailed in which case every Castle Clash player would be guilty of a misdemeanor for possessing a slot machine.

consideration paid"); *see also Lucky Bob's Internet Cafe, LLC v. Cal. Dep't of Justice*, No. 11-cv-148, 2013 WL 1849270, at *3 (S.D. Cal. May 1, 2013) (noting customers were "[p]aying for the chance to win money"). Heroes and talents are fictional virtual items with no real world value, let alone value in excess of the amount of consideration paid. *Cf.* 66 Cal. Op. Att'y Gen. 276 (1983) (gaming device did not offer "things of value" because it did not provide a "basis for furnishing money, merchandise or other thing of value"); Ex. 2. Giving the phrase "thing of value" the narrow (and common sense) construction given to penal statutes, *see, e.g. People v. Kroncke*, 70 Cal. App. 4th 1535, 1558 (1999), heroes and talents certainly do not qualify.

C. **Castle Clash In-App Events Are Not Illegal Lotteries As Players Do Not Have Any Right to Obtain Property by Playing.**

Under California Penal Code § 319, a lottery is defined as "any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property . . . ." Cal. Penal Code § 319. To allege a lottery, one must allege (1) a prize, (2) distributed by chance, and (3) consideration paid. *Trinkle*, 105 Cal. App. 4th at 1406. Section 319 is a penal statute that must be "strictly construed," and must not be interpreted to "make innocuous, common practices a violation of California criminal law." *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1404-06 (E.D. Cal. 1997).

Plaintiffs contend that Castle Clash in-app "events" where players can win heroes and in-game resources are unlawful lotteries because Sky Union offers heroes and in-game resources to the event winners, and purchase is necessary to play. (DE 14 ¶¶ 46, 47, 53, 72-76.) Plaintiffs ignore, however, that nothing is paid to win a "prize," and nothing of value is actually awarded.

First, the in-app "events" *are not lotteries*. Players who choose to purchase gems receive, *in addition* to the gems, an extra in-game item. (*See id.* ¶ 46.) There is no extra cost, nor do players lose gems they purchase by participating. Second, a prize has one central feature—that it

-14-

be *distributed*. *See Davis*, 21 Cal. 4th at 592 ("'Prize' encompasses property that the operator offers to distribute to one or more winning participants and not to keep for himself."); *W. Telcon, Inc. v. California State Lottery*, 13 Cal. 4th 475, 487 (1996) (holding prize must be "for disposal or distribution to others"). Where the "prize" is intellectual property that cannot be removed from the game or ever be owned by the player, it is not a prize under § 319. Turning fictional, virtual items into real-world prizes contravenes both common sense and common practice.

## IV. PLAINTIFF SOTO'S ILLINOIS LRA CLAIM FAILS AS A MATTER OF LAW BECAUSE HE DID NOT LOSE ANYTHING OF VALUE, SKY UNION IS NOT A "WINNER" OF THE ALLEGED GAMBLING TRANSACTION NOR IS SOTO A "LOSER."

The Illinois LRA is a narrow statute, penal in nature, that permits individuals who lost money or things of value gambling to recover that money or item of value from the winner of the gambling transaction. *See* 720 ILCS 5/28-8(a); *see also Sonnenberg v. Oldford Grp., Ltd.*, No. 13-0344-DRH, 2014 WL 1017898, at *4 (S.D. Ill. Mar. 14, 2014) ["Sonnenberg I"] (holding the LRA is penal in nature and "must be strictly construed"). The Illinois LRA provides that:

> [a]ny person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof . . .

720 ILCS 5/28-8(a). The Seventh Circuit teaches that "the [LRA] should not be interpreted to yield an unjust or absurd result contrary to its purpose." *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997).

Soto's LRA claim (Count IV) is based on the theory that he (i) lost things of value wagering and (ii) lost the wager while Sky Union won. (*See* DE 1-1 ¶¶ 84-90.) Soto's claim suffers from three fundamental defects: (i) he did not wager anything of value; (ii) Sky Union is did not "win" under the LRA; and (iii) Soto has not adequately alleged he "lost" under the LRA.

First, the LRA only permits recovery of the thing lost—here, gems, *not money*. 720 ILCS

5/28-8(a). Soto's effort to use the LRA recover gems defies common sense and demonstrates the inapplicability of the LRA to Castle Clash. Soto *did not* lose "any sum of money or thing of value" playing the in-app games. Soto purchased gems and used them to enhance his in-game experience. (*See* DE 14 ¶ 45.) To the extent he lost anything, he lost gems, which are not items of value and thus cannot have a value of at least $50. *See* 720 ILCS 5/28-8(a) (noting a "thing of value" must amount to "$50 or more"). A contrary reading would lead to the kind of absurd results—criminalizing commonplace videogames and the "loss" of fictional items—the Seventh Circuit cautioned against. *See Vinson*, 123 F.3d at 657; *see also Holmes v. Brickey*, 335 Ill. App. 390, 395 (3d Dist. 1948) ("[N]o right of action was intended . . . based solely on the loss at cards, dice, wagering or other gaming, unaccompanied by the payment of that loss.").

Second, LRA claims can only be pursued against "the winner," and, from the face of the Complaint, Sky Union is not a winner under the LRA. "Winners" are limited to those with "a direct stake in the outcome of the gambling." *Fahrner v. Tiltware LLC*, No. 13-0227, 2015 WL 1379347, at *7 (S.D. Ill. Mar. 24, 2015); *see also Sonnenberg I*, 2014 WL 1017898, at *5 (holding a "winner" must "risk[] money in the gambling activity."). Soto contends Sky Union is a winner because it developed and programmed Castle Clash and obtains the money spent on gems. (DE 14 ¶ 93.) These are the exact kind of allegations Illinois courts have rejected.

For example, in one recent Northern District case, *Langone v. Kaiser*, Judge Durkin dismissed similar putative class claims because he determined the fantasy sports site FanDuel was not a "winner" as it only "functions as 'the house,' charging an entry fee to participate in the fantasy sports games it hosts." No. 12 C 2073, 2013 WL 5567587, at *7 (N.D. Ill. Oct. 9, 2013). Judge Durkin held FanDuel cannot be a "winner" because it merely collects entry fees and transmits a prize, but "risks nothing" and "does not place any 'wagers' with particular

participants by which it could lose money based on the happening of a future event . . . ." *Id.* at *6; *see also Manning v. Creative Headquarters, LLC*, No. 11-2203, DE 83 (N.D. Ill. Mar. 30, 2012) (same);[10] *Sonnenberg v. Oldford Grp., Ltd.*, No. 13-0344, 2015 WL 1379505, at *6 (S.D. Ill. Mar. 24, 2015) (same). Similarly, Soto contends Sky Union is the winner because it hosts the games and collects an entry fee in the purchase of gems (which it collects regardless of how they are used, and whether or not they are ever used) to participate. (DE 14 ¶ 93.)

Plainly Sky Union neither participated in nor has a stake in the outcome of a given "wager." Castle Clash players wager gems to win heroes and talents; players thus "gamble" for heroes and talents, not money. (DE 14 ¶ 28.) Soto fails to allege Sky Union risks money in the gambling activity or has the ability to win heroes or talents. *Sonnenberg I*, 2014 WL 1017898, at *5; *Fahrner*, 2015 WL 1379347, at *7 (noting, under *Pearce v. Foote*, 113 Ill. 228 (Ill. 1885), a "winner" is one who participates in the risk and could be a "winner[] or loser[] depending on the happening of a certain [future] event.") (internal quotations omitted); *Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, at *9 (D.N.J. June 20, 2007) ("To suggest that one can be a winner without risking the possibility of being a loser defies logic and finds no support in the law."). The outcome of a given wager does not—and is not alleged to—impact Sky Union. Sky Union's only stake is in the purchasing of gems, which precedes any alleged gambling, and cannot make Sky Union a winner. *See Reuter*, 397 Ill. App. 3d at 924 (holding MasterCard's merchant fees did not give MasterCard "a direct stake" in plaintiff's gambling under the LRA).[11]

And third, the Court should dismiss Soto's claim because he has not adequately pleaded a "loss." The LRA's private right of action is limited to persons suffering a loss of at least $50,

---

[10]      All of the unpublished authorities cited herein are attached hereto as Group Exhibit 3.

[11]      Plaintiffs' contention that Sky Union has an interest in limiting heroes to "increase[] their market value," (DE 14 ¶ 36), does not indicate a "stake." Plaintiffs fail to allege Sky Union has any interest in a "market," and in fact Sky Union actively discourages any market. (*See* Ex. 1.)

and limits the time frame in which a loser can bring a claim to six months from the date of the loss. Accordingly, to allege a "loss," a plaintiff must "allege the exact amounts he purportedly lost gambling [and] when he lost the sum . . . ." *Sonnenberg*, 2015 WL 1379505, at *6; *see also Langone*, 2013 WL 5567587, at *6 n.5 (same); *Fahrner*, 2015 WL 1379347, at *6 (same). Soto generally alleges that over the course of "in or around" seven months (the underlying complaint was filed on April 10, 2015, (*see* DE 1-1)), he suffered "net losses" of "$50 or more." (DE 14 ¶ 45.) This is plainly insufficient to allege a loss of at least $50 on a date within six months of the complaint, and again highlights the inapplicability of the LRA as Soto lost *gems*, not money.

## V. PLAINTIFF SOTO NEVER SUFFERED A LOSS AND HAS NOT ALLEGED AN INTENTIONAL VIOLATION OF THE ILLINOIS PRIZES ACT.

The Illinois Prizes Act, in relevant part, "prohibits [an event] sponsor from conditioning receipt of a prize on the payment of money." *Volpe v. Caribbean Cruise Line, Inc*., No. 13 C 1646, 2013 WL 3724858, at *2 (N.D. Ill. July 16, 2013). The Prizes Act provides a private right of action for "[a] consumer who *suffers loss* by reason of any *intentional* violation" of the Prizes Act. 815 ILCS 525/40(b) (emphasis added). A "prize" is defined as "a gift, award, or other item or service of value that is offered or awarded to a participant . . . ." 815 ILCS 525/10.

Soto's Prizes Act claim (Count V) rests on the contention that Castle Clash in-app events are lotteries because players can win heroes and talents. (DE 14 ¶¶ 98-103.) Soto asserts players cannot play without buying gems, and that heroes and talents are "prizes." Soto's claim fails for three reasons. First, Soto did not suffer a loss. Second, he fails to allege Sky Union committed an *intentional* violation. And third, virtual heroes and talents are not prizes under the Prizes Act.

First, only those who "suffer loss" by participating in a lottery event can bring a claim. 815 ILCS 525/40(b). Soto alleges he suffered a loss because he did not win a "rare hero." (DE 14 ¶ 47.) This is not a loss. Soto alleges he purchased gems and was entered into purported

events. (*Id.*) He did not, however, lose anything. Soto bought and received gems. That he did not get the exact bonus item he wanted (though he received something) *in addition* to the gems he retained (and later used to enhance his game experience) cannot amount to a loss. If this were a loss, a similar loss would occur when purchasing a box of Cracker Jack that did not include the desired toy. *Cf. Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002) ("[Plaintiffs'] disappointment upon not finding an insert card in the package is not an injury to property.").

Second, Soto has failed to allege an "intentional violation" of the Prizes Act. *See* 815 ILCS 525/40(b); *compare with* 815 ILCS 520/15(a) (permitting a private right of action by anyone "injured by a *violation*" of the Pay-Per-Call Services Protection Act) (emphasis added). Soto simply alleges that "at all times [Sky Union] acted intentionally." (DE 14 ¶ 102.) This allegation is a bare legal conclusion and is plainly inadequate to allege Sky Union *intentionally violated* the Prizes Act. *See, e.g.*, *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013) ("Bare assertions of the state of mind required for the claim . . . must be supported with subsidiary facts."); *Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in Lary's complaint that the defendants 'willfully' and 'knowingly' violated the Act was a legal conclusion, not an allegation of fact that we must accept as true.").

And third, Sky Union did not offer a "prize" as defined under the Prizes Act. A "prize" is defined to include an item "of value" that is actually awarded. 815 ILCS 525/10. Virtual heroes and talents over which a player can never take ownership *have no value* and are not awarded. (*See also* Ex. 2.) It is tautological statutes should be read to avoid absurd results. The Prizes Act cannot be read to include a fictional videogame object within the term "prize," and turn the commonplace into the unlawful. *See United States v. Logan*, 453 F.3d 804, 806 (7th Cir. 2006) ("[C]ourts read statutes to make sense rather than nonsense. Absurd possibilities are ruled out.").

## VI. PLAINTIFF EXELBY LACKS STANDING TO PURSUE HER CLAIM UNDER THE MICHIGAN LOSS RECOVERY ACT, WHICH HAS BEEN SUPERSEDED BY RECENT MICHIGAN LAW.

The Michigan LRA—Count VII, pursued by Exelby—permits a claim "by the person losing any money or goods [gambling] . . . ." MCL § 600.2939(1). Exelby claims she lost money wagering gems to win heroes and talents. (*See* DE 14 ¶¶ 123-133.) Exelby, however, did not lose any money wagering, nor could she have won anything of value. And in any event, the Michigan LRA has been preempted, and thus she lacks standing to pursue her claim.

First, as established above, Exelby did not "los[e] any money" gambling; she purchased gems, at which point she received the full benefit of her bargain. (*See* DE 14 ¶ 48.) By the time Exelby participated in the alleged wager, she already purchased gems, which could never be exchanged for cash. (DE 1-1 ¶¶ 24, 29.) Accordingly, she could not have lost money engaging in the alleged gambling. *Cf. In re MasterCard Int'l Inc.*, 313 F.3d at 257; *Reuter*, 397 Ill. App. 3d at 923. Moreover, to engage in "gambling" under Michigan law, one must be capable of winning valuable property. *See, e.g.*, MCL § 750.303a; 3A Gillespie Mich. Crim. L. & Proc. § 87:1. As established above, fictional gems, heroes and talents *are not* items of value.

Second, Exelby lacks standing to bring a claim under the Michigan LRA, which has been superseded by the Michigan Gaming Control and Revenue Act ("MGCRA"). *See Parise v. Detroit Entm't, LLC*, 295 Mich. App. 25, 30 (2011) (finding an MCL 600.2939(1) claim preempted by the MGCRA). The MGCRA is a comprehensive statutory scheme that applies to "all persons who are licensed or otherwise participate in gaming," and provides the Gaming Control Board with "exclusive authority to regulate all aspects of casino gambling in Michigan." MCL § 432.203(4); MCL § 432.204a(1). The MGCRA supersedes "any other" inconsistent laws. MCL § 432.203(3); *see also Kraft v. Detroit Entm't, L.L.C.*, 261 Mich. App. 534, 546 (2004) ("That the phrase '[a]ny other law' sweeps broadly suggests that the Legislature meant to

include common law in addition to legislative enactments."); *McEntee v. Incredible Tech, Inc.*, No. 263818, 2006 WL 659347, at *2 (Mich. Ct. App. Mar. 16, 2006) (unpub.) (same).

Michigan courts have made clear that, in closely analogous circumstances to this case, the MGCRA preempts inconsistent statutory claims brought against non-legalized gaming. *See, e.g.*, *McEntee*, No. 263818, 2006 WL 659347, at *1 (holding video game constituted a "gambling game" to the extent it is played for money, and "[c]onsequently, the Golden Tee games, as well as the suppliers of the games, are governed by the MGCRA.").[12] As the Court in *McEntee* held, "where a plaintiff's cause of action arises out the playing of a game, machine, or equipment for money, . . . the plaintiff's cause of action . . . is preempted by the MGCRA," and thus the plaintiff lacks standing. *Id.* at *1-2. Exelby's Michigan LRA claim similarly fails.

## VII. PLAINTIFFS CANNOT STATE A UCL OR ICFA CLAIM BECAUSE THEY RECEIVED THE FULL BENEFIT OF THEIR BARGAIN.

All Plaintiffs assert an unfair competition claim under California's UCL (Count III) and, separately, Plaintiff Soto asserts an unfair competition claim under the ICFA (Count VI), which are predicated on the allegations that because Sky Union violated the California Penal Code and the Illinois LRA, respectively, Plaintiffs are entitled to their money back. (DE 14 ¶¶ 81, 112.) These allegations are meritless. Plaintiffs received *exactly what they paid for*, and thus did not suffer any cognizable damages.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). To allege a UCL claim, a "plaintiff needs to have 'suffered injury in fact and . . . lost money or property as a result of the unfair competition.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17204); *see also Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008) (noting loss requires "the disappearance or

---

[12] *McEntee* involved MCL § 750.315, a penal code analogue to the Michigan LRA.

diminution of value . . . in an unexpected or relatively unpredictable way."). Similarly, "ICFA declares unlawful '[u]nfair methods of competition and unfair or deceptive acts or practices . . . .'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting 815 ILCS 505/2). A private party must show actual "pecuniary loss" to pursue an ICFA claim. *Id.*

Plaintiffs' UCL claim is predicated on Sky Union's alleged violation of Penal Code §§ 330b and 319, and thus rests on *unlawful* conduct. (*See* DE 14 ¶ 81.) Because Plaintiffs' Penal Code claims fail, their UCL claim must be dismissed. *See, e.g.*, *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("[I]f the [underlying] claim is dismissed, then there is no 'unlawful' act upon which to base[ ] the derivative [UCL] claim.").

Likewise, Soto's ICFA claim rests on Sky Union's alleged violation of the Illinois LRA. (*See* DE 14 ¶ 112.) Because that claim fails, Soto's ICFA claim must be dismissed. *See, e.g.*, *Kim v. Riscuity, Inc.*, No. 06-1585, 2006 WL 2192121, at *4 (N.D. Ill. July 31, 2006) (Kennelly, J) (finding if underlying unfair conduct is inadequately pled, "there is no violation of the ICFA").

That said, even if Sky Union did violate California and Illinois law, Plaintiffs have not suffered compensable damages.[13] It is axiomatic that one who receives the benefit of their bargain cannot bring a UCL or ICFA claim. *See, e.g. Johnson v. Mitsubishi Dig. Elect. Am. Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010) ("If one gets the benefit of his bargain, he has no standing under the UCL."); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) ("Hall did not allege he suffered an injury in fact . . . . He expended money by paying Time $29.51– but he received a book in exchange. He did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it."); *Peterson*, 164 Cal. App. 4th at 1591 (same);

---

[13] This is in addition to the fact that there is no causal connection between the "lost money" and the allegedly unlawful conduct. *See, e.g.*, *Rubio*, 613 F.3d at 1204 (noting a UCL claim requires a "causal connection" between the unlawful or unfair conduct and injury); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012) (same)

*Kim*, 598 F.3d at 365-66 ("The plaintiffs agreed to pay a certain price for . . . clothing, which they do not allege was defective or worth less than what they actually paid. . . . [P]laintiffs in this case got the benefit of their bargain and suffered no actual pecuniary harm," and thus the ICFA claim failed.); *Frye v. L'Oreal, Inc.*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (same).

Plaintiffs plainly received the benefit of their respective bargains. Plaintiffs allege they purchased and received gems. (DE 14 ¶¶ 45, 48, 51.) They do not allege the gems were worth less than they paid, defective or unsatisfactory, nor do they allege they would not have purchased gems at all but for the in-app games. Even if Plaintiffs used gems to win heroes and talents, they do not allege the in-app games were somehow defective. That Plaintiffs allege they would not have used gems in the in-app games "but for Defendant's conduct" or were "induced" to do so (DE 14 ¶¶ 84, 113), is irrelevant. *See, e.g.*, *Koh v. S.C. Johnson & Son, Inc.*, No. 09-00927, 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) ("[B]eing induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the [UCL] as long as one still receives the benefit of the bargain."); *Frye*, 583 F. Supp. 2d at 958 (finding inadequate the allegation plaintiff would not have bought the lipstick had the unfair conduct been revealed). In short, Plaintiffs received exactly what they paid for. *Cf. In re MasterCard*, 313 F.3d at 264 (finding plaintiffs who voluntarily gambled "got exactly what they bargained for").

At best, Plaintiffs circularly contend they did not receive the benefit of the bargain because the legality of the in-app games "formed the basis of their bargains," and the in-app games are illegal. (DE 14 ¶¶ 85, 115.)[14] Putting aside the clear implication of these allegations- that Plaintiffs were unaware of any "harm" until their attorneys told them—Plaintiffs' allegations

---

[14] These allegations require the suspension of disbelief. Plaintiff Soto, for one, alleges he participated in an "unlawful" event on April 2, 2015—one week before the complaint was filed. (DE 14 ¶ 47.) Surely by then he retained his counsel and was aware of any purported illegality.

fail for two reasons. First, the relevant bargain is the purchase of gems; the legality of the in-app games (which were played *after* gems were purchased) could not have underlied that bargain.

Second, California and Illinois courts alike find such allegations insufficient. In *Frye v. L'Oreal, Inc.*, the plaintiff brought an ICFA claim concerning lead in lipstick she purchased. *See* 583 F. Supp. 2d at 958. Judge Gettleman discarded plaintiff's ICFA claim on the basis she failed to "allege that she would not have purchased lipstick, that she would have purchased cheaper lipstick, or that the lipstick in question had a diminished value because of the lead." *Id.* In other words, she failed to allege the lead "had any observable economic consequences." *Id.*; *see also Germain v. J.C. Penney Co.*, No. 09-cv-2847, 2009 WL 1971336, at *6 (C.D. Cal. July 6, 2009) (dismissing UCL claim based on the unlawful prong where plaintiffs "purchased Dockers merchandise, which they retained and used."). Similarly, Plaintiffs fail to allege the illegality of the games (which has not and cannot be established) had an economic effect on the price of gems (which they retained the full benefit of). Nor could it have any economic effect, given "every man is presumed to know the law." *United States v. Bryza*, 522 F.2d 414, 423 (7th Cir. 1975).

Plaintiffs cannot receive the full benefit of their purchase and their money back. *Cf. Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 629 (1st Dist. 2008) (noting ICFA does not permit windfall recoveries). Accordingly, Plaintiffs' UCL and ICFA claims must be dismissed.

## VIII. SOTO'S AND EXELBY'S UNJUST ENRICHMENT CLAIMS ARE SUPERFLUOUS AND IN ANY EVENT FAIL AS THEY RECEIVED THE FULL BENEFIT OF THEIR BARGAIN.

Soto and Exelby assert claims for unjust enrichment under Illinois law (Count VII) and Michigan law (Count IX). These claims fail for two reasons. First, they are superfluous. Soto and Exelby allege they "conferred a benefit" on Sky Union by purchasing gems, which Sky Union should not be permitted to retain because it was "unjustly obtained" through illegal games. (DE 14 ¶¶ 118, 120, 136, 138.) In other words, Plaintiffs seek restitution for unlawful

acts—the identical remedy and allegations that underlie their UCL and ICFA claims. It is well established one "cannot assert unjust enrichment claims that are merely duplicativ of statutory or tort claims." *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 967 (N.D. Cal. 2013) (finding unjust enrichment superfluous because "restitution is already a remedy" for a UCL claim); *FDIC v. Saphir,* No. 10 C 7009, 2011 WL 3876918, at *9 (N.D. Ill. Sept. 1, 2011) ("[C]ourts have the authority to dismiss duplicative claims if they allege the same facts and the same injury.")

Second, Sky Union cannot have been unjustly enriched where Plaintiffs received exactly what they bargained for—gems to enhance their in-game experience. *See, e.g.*, *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519-20 (7th Cir. 2011) (holding no unjust enrichment as consumer not deceived and received what he wanted, because "the retention of this consumer's money is not detrimental to him"); *Comet Theatre Enterp., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected."); *Alston v. Advanced Brands & Importing Co.*, No. 05-72629, 2006 WL 1374514, at *10 (E.D. Mich. May 19, 2006) (same) *vacated on other grounds*. At best, Soto and Exelby allege they did not receive the benefit of their bargain because the purchase of gems was founded on the legality of the in-app games. (*See* DE 14 ¶¶ 121, 139.) Even if this were true, Soto and Exelby *still* fail to allege they received something less than what they wanted (*i.e.*, the gems were worth less) such that Sky Union could plausibly have been unjustly enriched at their expense.

## CONCLUSION

For the foregoing reasons, Sky Union, LLC respectfully requests this Court to enter an order: (i) dismissing Plaintiff Jose Soto, Christine Exelby and Tanner Eastman's First Amended Class Action Complaint in its entirety and with prejudice for failure to state a plausible claim for relief and (ii) awarding all such other relief as deemed equitable and just.

**DATED**: August 13, 2015                    Respectfully submitted,


                                             */s/ David S. Almeida*

                                             David S. Almeida, Esq.
                                             dalmeida@sheppardmullin.com
                                             David M. Poell
                                             dpoell@sheppardmullin.com
                                             Mark S. Eisen
                                             meisen@sheppardmullin.com
                                             **SHEPPARD, MULLIN,**
                                             **RICHTER & HAMPTON** LLP
                                             70 West Madison Street, 48th Floor
                                             Chicago, Illinois  60602
                                             Telephone:  (312) 499-6300
                                             Facsimile:  (312) 499-6301

                                             *Counsel for Sky Union, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** was served upon all interested parties using this Court's ECF filing system this 13th day of August, 2015.

*/s/ David S. Almeida*