**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSE SOTO, CHRISTINE EXELBY,** | ) | |
| **and TANNER EASTMAN, individually and** | ) | |
| **on behalf of others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 4768** |
| | ) | |
| **SKY UNION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Jose Soto, Christine Exelby, and Tanner Eastman have sued Sky Union, LLC, on

behalf of themselves and putative classes of similarly situated persons. Plaintiffs allege

that they lost money playing the online game Castle Clash, which Sky Union operates.

They contend that Castle Clash is a game of chance—gambling—that Sky Union

camouflaged as a game of skill.

Plaintiffs claim that Sky Union violated the laws of Illinois, Michigan, and

California—the states in which Soto, Exelby, and Eastman reside, respectively.

Specifically, they allege that Sky Union violated California law by (1) operating a slot

machine, Cal. Penal Code § 330b(d) (Count 1); (2) convening lottery events, Cal. Penal

Code § 319 (Count 2); and (3) engaging in unfair competition arising out of this unlawful

conduct, Cal. Bus. & Prof. Code §§ 17200 (Count 3). Plaintiffs allege that Sky Union

violated the Illinois Loss Recovery Act (ILRA), 720 ILCS 5/28-8(a) (Count 4), the Illinois

Prizes and Gifts Act (IPGA), 815 ILCS 525/40 (Count 5), and the Illinois Consumer

Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS § 505/1 (Count 6).

Plaintiffs also allege that Sky Union violated the Michigan Loss Recovery Statute

(MLRS), Mich. Comp. Laws § 600.2939 (Count 8), and that Sky Union also should be

held liable for unjust enrichment under Illinois and Michigan law (Counts 7 and 9,

respectively).

Sky Union removed the case to federal court on the basis of the Class Action

Fairness Act, 28 U.S.C. §§ 1332(d) & 1453. Sky Union has now moved to dismiss

plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil

Procedure Rule 12(b)(6). For the reasons stated below, the Court grants Sky Union's

motion.

## Background

The Court takes the following facts from plaintiffs' complaint, accepting them as

true for purposes of the present motion. *See Fortres Grand Corp. v. Warner Bros.

Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Electronic gaming has never been more

popular than it is today. As more people have integrated Internet-connected mobile

devices into their daily lives, and as those devices have grown more advanced and

accessible, so too have the number and type of online games that can be played on

them. "Free-to-play" games are online games that a user may download to a mobile

device and play without charge. Often these games are free only for those users who

choose to keep them that way. Many of these games, including the one at issue in this

case, offer users the opportunity to spend money at various stages of gameplay.

One such game is Sky Union's "Castle Clash." From the complaint alone, the

2

Court cannot say exactly what the objective of Castle Clash is, but it appears to be a game of conquest in which players amass armies of "Heroes" to do battle with one another. As the Heroes fight one another, they develop more skills and attributes that make them stronger and more capable of winning future battles. As players play the game, Sky Union randomly places "shards"—a type of virtual currency in this virtual world—in the game's "dungeon." Players can acquire new Heroes from the "Hero Shop," where players are offered Heroes with varying degrees of skill and strength. Players pay to purchase these Heroes from the Hero Shop by using the shards they have accumulated through normal game play. The weakest and least effective Heroes (categorized by Sky Union as "Sacrifice" Heroes) cost very few shards, while the strongest and most effective Heroes (classified as "Elite" and "Legendary") cost much more. Sky Union limits the daily number of visits players may make to the dungeon, but players may purchase additional visits from Sky Union if they would like to advance more quickly.

Not all of the virtual currency in Castle Clash is earned through ordinary gameplay. When a player downloads and begins to play Castle Clash, Sky Union gives her a small number of free "gems" that she may use to make purchases within the game. According to the complaint, players stockpile more gems only by paying real money for them. Sky Union sells gems in bulk, ranging from 230 gems for $1.99 to 16,800 gems for $99.99. These gems may be used to purchase "in-game enhancements or to speed up [a player's] progress in the game. For example, consumers can spend gems to reduce the time it takes to 'recruit troops' for virtual battles." Am. Compl. ¶ 23. These gems may also be used to participate in games of

chance in which Sky Union awards players new Heroes or "Talents," special attributes that modify a Hero's combat behavior. If a player wants to collect a Hero without spending the shards she has collected over time, she may purchase gems and use them to enter into a "Hero Roll." If a player would like to develop her Heroes without spending the time to hone their skills in battle, she may use her purchased gems to enter a "Talent Roll."

With each Hero Roll, players spend 150 gems to win a randomly selected Hero. Because not all characters are created equally, however, Sky Union's randomizing algorithm is designed to return a high value Hero less frequently than it returns low value Heroes. For example, based on their own experiments with the game, plaintiffs estimate that the odds against winning a character known as "Crystal Ooze"—by plaintiffs' standards, "an ordinary and effectively worthless Hero," *id.* ¶ 31—are five to one. By contrast, the odds against winning a powerful and valuable Hero known as "Grizzly Reaper" are roughly one thousand to one. Plaintiffs' complaint contains less information about Talent Rolls, but they are apparently similar to Hero Rolls: participants always win something, but they have a far better chance of winning a low-value Talent than they have of winning high-value Talents.

In addition to allowing players to purchase gems and spend them on Hero and Talent Rolls, Sky Union also often organizes in-game events whereby players with large quantities of gems are awarded rare Heroes or Talents. In October 2014, for example, Sky Union held an event called the "Great Gems Bonanza," through which the twenty Castle Clash players owning the most gems at the end of one day were awarded a new highly skilled and valuable Hero named "Moltanica." Sky Union informed players how

4

many gems they would need to buy to have a chance of winning, and some players spent as much as $3,000 in one day to achieve a high enough rank to win the coveted Hero.

In or around November 2013, Jose Soto, an Illinois resident, downloaded Castle Clash to his mobile device and began to play the game. Eventually, he began purchasing gems from Sky Union to play Hero and Talent Rolls. From November 2013 to March 2015, Soto spent over $200 on gems that he used on these Rolls, at least fifty dollars' worth of which he lost in the six months leading up to the filing of this lawsuit. Sky Union also offered Soto the opportunity to participate in five separate events from July 2014 through April 2015 through which he could win "legendary" Heroes, "materials," gems, shards, "Honor Badges, Merits, [a] Gold Key, Crest Bags, [and] Rare Crest Bags." *Id.* ¶ 47(b). The prizes awarded in all of these events were randomly selected by Sky Union's algorithm, and all of them required players to purchase between 1,400 and 3,000 gems to participate. Soto participated in two of these events. Although he spent roughly ten dollars to purchase more than 1,400 gems for each event, he did not win a rare Hero in either event.

In or around October 2013, Christine Exelby, a Michigan resident, downloaded Castle Clash to her mobile device and began to play the game. She likewise began purchasing gems from Sky Union so that she could participate in Hero and Talent Rolls. From October 2013 to March 2015, Exelby spent more than $2,000 on gems. She alleges that every time she sat down to play Castle Clash she spent at least five dollars' worth of gems on Hero Rolls and Talent Rolls and that on many occasions she spent more than ninety-nine dollars' worth of gems playing these games of chance.

5

Tanner Eastman, a California resident, also downloaded Castle Clash in late 2013. From late 2013 through December 2014, Eastman spent more than $600 on gems used for Hero and Talent Rolls. He also spent $12.11 to purchase 1,400 gems so he could participate in Sky Union's "Smash & Win!" event in July 2014. "Smash & Win!" was a twenty-four-hour contest in which players were given one chance per 1,400 purchased gems to smash one of three virtual eggs to win gems, shards, honor badges, and rare Heroes. It is unclear from the complaint whether Eastman actually participated in this event and what kind of prize such participation might have yielded.

In April 2015, Soto, Exelby, and Eastman filed suit against Sky Union in Illinois state court, alleging that the games of chance in Castle Clash—both everyday Hero and Talent Rolls and the game's intermittently offered events—constitute unlawful gambling under the laws of Illinois, Michigan, and California. On behalf of herself and similarly situated Castle Clash players in California, Eastman alleges that (1) the game's Hero and Talent Rolls are "slot machines or devices" prohibited under California law, Cal. Penal Code § 330b(d) (count 1); (2) Sky Union's events are unlawful "lotteries" under California Penal Code § 319 (count 2); and (3) by eliciting payment for these games from Castle Clash players in California, Sky Union violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (count 3). Similarly, Soto claims that (1) Hero and Talent Rolls violate the ILRA, 720 ILCS 5/28-8(a) (count 4); (2) events like "Smash & Win!" are unlawful "sweepstakes" that violate the IPGA, 815 ILCS 525/40 (count 5); and (3) by eliciting payment for these games from Castle Clash players in Illinois, Sky Union violated the ICFA, 815 ILCS § 505/1 (count 6). Exelby, on behalf of Michigan players, claims that Hero and Talent Rolls are unlawful games of chance that

6

violate the MLRS, Mich. Comp. Laws § 600.2939 (count 8). Soto and Exelby also seek to recoup their losses based on the equitable theory of unjust enrichment under Illinois and Michigan law (counts 7 and 9).

Sky Union timely removed this suit to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) & 1453. It has moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Discussion

When considering a motion to dismiss for failure to state a claim, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To state a viable claim, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Sky Union contends that all nine counts of plaintiffs' complaint must be dismissed. As a general matter, Sky Union argues that no component of Castle Clash qualifies it as an unlawful game of chance under California, Illinois, or Michigan law because players use virtual, valueless currency to participate in Rolls and events with virtual, valueless prizes. Sky Union also argues that counts 1 and 2 must be dismissed because they allege violations of California Penal Code provisions that do not provide private rights of action; count 5 must be dismissed because plaintiffs failed to adequately plead an element of their IPGA claim; because another statute has

7

superseded it, the MLRS does not provide Exelby with standing to sue and count 8 must accordingly be dismissed; and counts 7 and 9 must be dismissed because plaintiffs' unjust enrichment claims are duplicative of their other claims and cannot be used to recoup gambling losses.

## A.      Claims under California law (counts 1, 2, and 3)

Plaintiffs contend that Sky Union has violated two California antigambling statutes.  First, they allege that Sky Union has violated a provision that concerns slot machines.  Section 330b of the California Penal Code forbids the possession of "any slot machine or device."  Cal. Penal Code § 330b.  Second, plaintiffs allege that Sky Union has violated California's prohibition on "lotteries."

In count 1 of their amended complaint, plaintiffs request relief in the form of "an order declaring that Defendant's actions constitute a violation of Cal. Penal Code § 330b."  Am. Compl., dkt. no. 14, ¶ 70.  Similarly, in count 2, plaintiffs seek "an order declaring that Defendant's actions constitute a violation of Cal. Penal Code § 319."  *Id.* ¶ 77.  Sky Union contends that counts 1 and 2 must be dismissed because the statutory provisions allegedly violated are criminal statutes and do not provide private rights of action.  In their opposition memorandum, plaintiffs agree that counts 1 and 2 do not provide independent bases for recovery.  *See* Pl.'s Resp., dkt. no. 26, at 26.  The Court agrees as well and therefore dismisses counts 1 and 2.

The statute implicated by the conduct alleged in count 3, however, does permit private enforcement.  *See* Cal. Bus. & Prof. Code § 17206(a).  California's unfair competition law prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]."  *Id.* § 17200.  Plaintiffs contend that Sky Union violated this law because its business is

unlawful under sections 330b and 319 of the California Penal Code. Am. Compl., dkt. no. 14, ¶ 81. Although plaintiffs may not sue for violations of the criminal statutes as such, they may proceed on their unfair competition claim if they have properly alleged that Sky Union engaged in conduct that violates either of these two criminal statutes and they meet the other requirements for suit under the unfair competition law..

California law prohibits manufacturing, owning, or operating a "slot machine or device." Cal. Penal Code § 330b(a). The statute further provides:

> For purposes of this section, 'slot machine or device' means a machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable to him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of operation also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value.

Cal. Penal Code § 330b(d). California courts have observed that the plain text of this statute sets forth three key elements: payment, chance, and prize. *See People ex rel. Green v. Grewal*, 61 Cal. 4th 544, 564, 352 P.3d 275, 286 (2015) (quoting *Trinkle v. Stroh*, 60 Cal. App. 4th 771, 782, 70 Cal. Rptr. 2d 661, 667 (1997) (*Trinkle 1*)). First, the machine or device must be activated by "the insertion of money or [some] other object." *Trinkle v. Cal. State Lottery*, 105 Cal. App. 4th 1401, 1410, 129 Cal. Rptr. 2d 904, 910 (2003) (*Trinkle 2*). Second, "the operation of the machine [must be] unpredictable and governed by chance." *Id.* Third, "by reason of the chance operation of the machine, the user may become entitled to receive a thing of value." *Id.*

Sky Union disputes whether its game satisfies the first and third of these elements.[1] First, it contends that when players use gems to purchase Rolls, they are not playing a slot machine because gems are not real currency. This argument disregards the plain language of section 330b(d), which provides that in addition to machines or devices that require the insertion of money or coins, the term "slot machine or device" includes devices that may be operated "by any other means." Cal. Penal Code § 330b(d). Moreover, it would make little sense to read the broad language of section 330b(d) to capture games operated by insertion of purchased physical tokens while excluding games operated by insertion of purchased virtual gems. For the purpose of determining whether Castle Clash is functionally a slot machine when players engage in Rolls, it does not matter that gems are imaginary currency.

It does matter, however, that Heroes and Talents are imaginary rewards. Under section 330b(d), a device is a "slot machine or device" only if it presents users with the possibility of winning a "thing of value," an "additional chance or right to use the slot machine or device," or a token that may be exchanged for a thing of value. Cal. Penal Code 330b(d).

Plaintiffs do not dispute that Heroes, Talents, and Gems cannot be redeemed for

---

[1] As for the second element, although Sky Union does not dispute that Hero and Talent Rolls are games of chance, it gently suggests in a footnote that it should be exempted from liability because Castle Clash is predominantly a game of skill. Under section 330b(f), "[p]inball and other amusement machines or devices, which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not included within the term slot machine or device, as defined in this section." Cal. Penal Code § 330b(f). At least one other court has found this statutory exception satisfied in a similar case. *See Mason v. Machine Zone*, No. JKB-15-1107, 2015 WL 6335771, *4–5 (D. Md. Oct. 20, 2015). Aside from Sky Union's footnote citing section 330b(f), the parties have not addressed this provision and have operated on the assumption that Rolls—indisputably games of chance—may be considered separately and apart from Castle Clash. The Court therefore assumes the same.

real money or sold to either Sky Union or other players. Plaintiffs nevertheless argue that they stand to win something of value when they participate in Hero and Talent Rolls. Plaintiffs offer three reasons that the items they can win through Rolls are "things of value." First, plaintiffs argue that Heroes have actual value based on the amount of money a player must expend on gems to guarantee winning each type of Hero. Plaintiffs multiply the amount of real money it costs to purchase enough gems to Roll for a Hero by the number of Rolls it would take to guarantee, based on the probabilities, that the player would get the Hero he most values. For example, because plaintiffs may purchase 230 gems for $1.99 and one Roll costs 150 gems, plaintiffs claim a Roll costs roughly $1.29. The odds of winning rare Hero "Pumpkin Duke," according to plaintiffs, are five hundred to one. Thus, plaintiffs say, the "expected cost" of Pumpkin Duke is roughly $645.00. [2]

This method of valuation is fallacious and circular. By the same logic, a game's reward would be a "thing of value" any time a player pays to play a game of chance. This would render superfluous the statutory language imposing liability only on devices that award a prize. *See Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1207, 141 P.3d 225, 248 (2006) (refusing to "deprive [a] phrase of significance, contrary to the principle of statutory construction that interpretations which render any part of a statute superfluous are to be avoided").

Second, Plaintiffs claim that Heroes and Talents are worth the amount by which they increase the value of a Castle Clash account sold on the open market. Plaintiffs

---

[2] This, of course, neglects the fact that when players purchase 16,800 gems for $99.99, each Roll costs only $0.89. Using this figure, Pumpkin Duke's value (based on plaintiffs' theory) would be closer to $445.00.

explain that players often sell their accounts to other players through a secondary market not provided or endorsed by Sky Union. The price sellers can get usually depends on the quality of the Heroes and Talents they have accumulated through gameplay and Rolls. A player purchases gems and spends them on a Hero Roll; through that Roll, he wins Grizzly Reaper, an extremely rare and powerful Hero; when he puts his account up for sale, he can set a higher price than if he had won a common or less powerful Hero. To plaintiffs, this is analogous to purchasing tokens at a casino, inserting one into a slot machine, hitting the jackpot, and cashing out the tokens that come pouring out of the machine.

The two situations differ in two critical ways. First, a player who purchases tokens at a casino cashes them out by exchanging them for money at the casino itself. The casino sets a value for its tokens, and when players deposit tokens into slot machines, they can recoup their losses (or some portion or multiple of them) if the odds work out in their favor. Castle Clash players, on the other hand, cannot "cash out" with Sky Union. The only way a person who wins a rare Hero may make money on his victory is by convincing another Castle Clash player to pay more to buy the winner's account than the winner paid to purchase gems for the Rolls it took to win desirable Heroes. Second, the tokens that one obtains from a winning round at a slot machine are exchangeable for money. By contrast, when Castle Clash players win Heroes or Talents, they do not turn to the secondary market to sell those Heroes and Talents; indeed, plaintiffs' complaint makes clear that the game is designed to make this impossible. Instead, players sell their entire accounts, which plaintiffs contend increase in value when plaintiffs are awarded rare and powerful Heroes. The amount a player

12

can get for selling his account to another player says little about the values of the individual items (Heroes, Talents, etc.) contained within that account.

Finally, plaintiffs insist that because Heroes and Talents advance gameplay, winning them in a game of chance is like being awarded a free play, which California courts have found to be things of value. *See Score Family Fun Ctr., Inc. v. Cty. of San Diego*, 225 Cal. App. 3d 1217, 1220–21, 275 Cal. Rptr. 358, 359–60 (1990). This also is wrong. Section 330b(d) expressly provides that a device is an unlawful "slot machine or device" where the game rewards players with an "additional chance or right to use" it, Cal. Penal Code § 330b(d), and California courts have indeed held that a "reward of extended play by a video game for winning is a 'thing of value' within the meaning of the Penal Code definition." *Score Family Fun Ctr.*, 225 Cal. App. 3d at 1220, 275 Cal. Rptr. at 359 (quoting *Merandette v. City & Cty. of San Francisco*, 88 Cal. App. 3d 105, 114, 151 Cal. Rptr. 580, 586 (1979)). This makes sense because, as those courts have explained, additional gameplay ordinarily costs additional money—if a game costs twenty-five cents to play one round, and a player wins an extra round, he has been awarded something worth twenty-five cents. But plaintiffs do not allege that high quality Heroes and Talents extend gameplay. Instead, they allege that high quality Heroes and Talents *improve* gameplay. Added enjoyment simply does not have measurable worth, and it cannot be a "thing of value" under section 330b(d).

Heroes and Talents are not exchangeable for real money or other goods, either within the game or in the real world. Ultimately, players who use their purchased gems to play Rolls are not paying for the chance to win anything of measurable value. Because Heroes and Talents are not "piece[s] of money, credit[s], allowance[s], or

13

thing[s] of value," "additional chance[s] or right[s] to use" Castle Clash or its Rolls, or "check[s], slug[s], token[s], or memorand[a], whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade," neither Castle Clash nor its Roll games constitute slot machines under California Law.  Cal. Penal Code § 330b(d).

Similar logic shows why Sky Union's in-game events are not lotteries under California law.  Under section 320 of the California Penal Code, no person may "contrive[], prepare[], set[] up, propose[], or draw[] any lottery."  Cal. Penal Code § 320. "Lottery" is defined in section 319, which provides:

> A lottery is any scheme for the disposal or distribution of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or any interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known.

Cal. Penal Code § 319.  "[A] lottery is defined by three elements, namely, a prize, distribution by chance, and consideration."  *Hotel Emps. & Rest. Emps. Int'l Union v. Davis*, 21 Cal. 4th 585, 592, 981 P.2d 990, 996 (1999).

Through events like "Smash & Win!," Sky Union gave Castle Clash players the opportunity to purchase and spend gems for the right to break open eggs containing unpredictable treasures that will enhance their gaming experience.  Plaintiffs contend that these events are "lotteries" because they are games of chance that require players to pay an entry fee and that offer valuable prizes in the form of gems, shards, honor badges, and rare Heroes.  Sky Union does not argue that these events are not games of chance, but it insists that the events require no consideration and offer no prize.  Its

14

argument is that because gems are not real and have no real-world value, they cannot be consideration, and the virtual items players can win cannot be prizes under the statute.

Taking the allegations in the complaint as true, the Court is not prepared to say that gems are not capable of serving as consideration. The complaint alleges that players must purchase gems from Sky Union in order to participate in in-game events. Thus requiring players to convert their money into gems to enter contests does not render their cash payment too remote to serve as consideration. But like section 330b(d), section 319 does not criminalize contests whose prizes have no monetary value. Castle Clash players may be ecstatic when they win rare Heroes, honor badges, gems, or shards, but these items have no measurable value. They are therefore not prizes under the statute.

The conduct alleged does not violate section 330b(d) or section 319 of the California Penal Code, and plaintiffs have not asserted that Sky Union's conduct violates any other California law. In short, plaintiffs have not stated a claim for unfair competition under California law. The Court therefore dismisses count three.

## B.    ILRA and IPGA claims (counts 4 and 5)

Defendants next seek dismissal of plaintiffs' claims under Illinois law. These claims mimic plaintiffs' claims under California law: plaintiffs allege that (1) Sky Union's Hero and Talent Rolls violate the ILRA (count 4); (2) Castle Clash's in-game events violate the IPGA (count 5); and (3) by profiting from its violation of these laws, Sky Union engaged in unfair competition in violation of the ICFA (count 6).

The ILRA provides that any person "who by gambling shall lose to any other

15

person" any sum of money or property worth fifty dollars or more may sue "the winner" to recover the money or property lost.  720 ILCS 5/28-8(a).  Pursuant to Illinois statute, "gambling" is defined as "knowingly play[ing] a game of chance or skill for money or other thing of value."  *Id.* § 28-1(a)(1).[3]  The cases interpreting this statute make it clear—just as the plain text of the statute does—that a plaintiff may only recover what he has "lost" from the person who "won" it, and that that which was lost and won must be money or some other thing of value.  *People v. One Mech. Device*, 11 Ill. 2d 151, 155, 142 N.E.2d 98, 100 (1957); *see also Sonnenberg v. Amaya Grp. Holdings (IOM) Ltd.*, Nos. 15-1885, 15-1887, 2016 WL 197176, at *2 (7th Cir. Jan. 15, 2016).

Sky Union makes three arguments in support of dismissal of plaintiffs' ILRA claim.  First, Sky Union contends that Heroes and Talents do not constitute "money or [an]other thing of value" under the statute.  Second, Sky Union says that it does not meet the statutory definition of a "winner."  Third, Sky Union contends that plaintiffs have failed to adequately allege the amounts that they lost playing these games.

The Court need not reach the latter two questions because like California, Illinois does not provide for liability where games of chance offer rewards with no value.  As explained above, Heroes and Talents cannot be monetized.  They merely improve, to greater and lesser extents depending on their strengths and skills, the gameplay experience for Castle Clash players.  And under Illinois law, "the possibility of winning a greater or lesser amount of amusement" is not gambling.  *One Mech. Device*, 11 Ill. 2d at 156, 142 N.E.2d at 100.  Heroes and Talents are not "things of value" under the ILRA, so the Court dismisses count 4.

---

[3] The statute provides numerous other definitions of gambling, none of which is relevant to this case.  *See* 720 ILCS 5/28-1(a)(2)–(8).

The same problem undermines plaintiffs' IPGA claim. The IPGA prohibits the sponsor of an event from conditioning receipt of a prize on the payment of money. 815 ILCS 525/20. The statute defines a "prize" as "a gift, award, or other item or service of value that is offered or awarded to a participant in a real or purported contest, competition, sweepstakes, scheme, plan, or other selection process that involves an element of chance." *Id.* § 10. The Act provides a private right of action for any consumer "who suffers loss by reason of any intentional violation of [the statute]." *Id.* § 40. Plaintiffs contend that because they were required to pay to enter events like "Smash & Win!," Sky Union violated the IPGA. Sky Union advances three arguments against liability: first, plaintiffs did not suffer any "loss"; second, plaintiffs have not sufficiently alleged "intent"; and third, these events did not include any "prize" under the act.

The first two of these arguments lack merit. First, plaintiffs have adequately alleged that they suffered a loss. They allege that Sky Union required them to purchase gems in order to participate in the in-game events. As explained above, simply adding a step whereby players must purchase digital currency and use that currency to participate does not nullify the pecuniary loss a player suffers if he is required to make a purchase in order to play. Second, plaintiffs have adequately alleged intent. Plaintiffs need not allege that Sky Union intentionally violated the IPGA; they need only allege that Sky Union intentionally engaged in the activity plaintiffs claim is unlawful.

Sky Union's third argument, however, is valid: plaintiffs have failed to state a claim because in-game events do not offer a "prize" under the statute. The IPGA expressly defines a prize as something of value, and in-game items like shards, merit

17

badges, Heroes, and Talents have no actual value. Accordingly, the Court dismisses count 5.

In count 6, plaintiffs allege that Sky Union violated the ICFA, which prohibits unfair practices in trade or commerce. 815 ILCS 505/2. This includes "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or concealment" as well as "suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." *Id.* Plaintiffs allege in their complaint that they were deceived because they bought gems to participate in Rolls on the implied promise that these Rolls were lawful, when in fact they constituted unlawful gambling. In their opposition memorandum, plaintiffs also argue that they suffered economic injuries covered by the ICFA when they bought into in-game events and because they were led to believe these events were legal when they in fact were not. Defendants seek dismissal of this claim because Rolls and in-game events are not unlawful. They also argue that even if paying gems for a Roll is an unlawful transaction, plaintiffs suffered economic losses only when they paid money for gems—a transaction for which they received the full benefit of their bargain.

Plaintiffs have failed to state a claim that Sky Union's Hero and Talent Rolls, in-game events, or any other aspects of Castle Clash are unlawful. Thus they have not alleged a viable ICFA claim, for they have failed to allege any unfair practice on the part of Sky Union. The Court dismisses Count 6.

## C.  MLRS claim (count 8)

The same logic explains why plaintiffs' MLRS claim is deficient. Under the MLRS, a person who loses "money or goods" may bring suit "against the person

receiving the same" if the recipient took possession of the money "by gaming."  Mich. Comp. L. 600.2939(1).  Sky Union advances two arguments in support of its motion to dismiss plaintiffs' claim under this statute.  First, Sky Union argues that Exelby neither lost money nor engaged in "gaming" as it is defined under Michigan law; rather, Exelby purchased gems and used them within Castle Clash.  Second, Sky Union argues that Exelby does not have standing to sue under Michigan law because the MLRS has been superseded by Michigan's Gaming Control and Revenue Act (MGCRA), Mich. Comp. L. § 432.203(3).

No court has interpreted the meaning of "gaming" within the context of the MLRS, but some have considered the term in a similar context.  Plaintiffs point to two of these cases to show that "gaming" includes playing games of chance that offer non-monetary prizes.  In *Oatman v. Davidson*, 310 Mich. 57, 16 N.W.2d 665 (1944), the Michigan Supreme Court held that the pinball machines at issue were gambling devices because they awarded free plays to lucky players "entirely by chance or with a slight variation by reason of acquired knowledge and skill on the part of the player."  *Id.* at 58, 16 N.W.2d at 665.  In *Automatic Music and Vending Corp. v. Liquor Control Commission*, 426 Mich. 452, 396 N.W.2d 204 (1986), the Michigan Supreme Court acknowledged that the term "gaming" is not defined by statute, and therefore relied on the common-law definition, "which requires the presence of three elements:  (1) price or consideration, (2) chance, and (3) prize or reward."  *Id.* at 456–57, 396 N.W.2d at 206. The court then likewise held that a game of chance is a gambling device through which one participates in "gaming" where players win free plays, because a free play is a reward or prize.  *Id.* at 458, 396 N.W.2d at 206.

19

Yet in both of these cases (and the numerous others, decided in other jurisdictions, upon which plaintiffs rely), the courts held that free plays of games constitute a "prize or reward" because the games in question required payment to play in the first place. In other words, Michigan courts consider free plays prizes because they are things of value, and they are things of value because playing the game ordinarily would cost money.

As explained in greater detail above, Heroes and Talents cannot be bought or sold as such, and it is not possible to calculate their worth by looking to a constantly changing and unsanctioned secondary market for Castle Clash accounts. Accordingly, even if the MGCRA does not supersede the MLRS, plaintiffs cannot sustain a claim under the MLRS based on the conduct alleged. The Court therefore dismisses Count 8.

**D.      Unjust enrichment claims (counts 7 and 9)**

Finally, plaintiffs assert unjust enrichment claims under both Illinois and Michigan law. In *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516–17 (7th Cir. 2011), the Seventh Circuit observed that Illinois courts have sometimes recognized unjust enrichment as an independent cause of action and on other occasions have stated that it is merely a "'condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence.'" *Gagnon v. Schickel*, 2012 IL App (1st) 120645 ¶ 25, 983 N.E.2d 1044, 1052 (2012) (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995)). In any event, "[t]o state a claim for unjust enrichment [under Illinois law], 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity,

and good conscience.'" *Gagnon*, 2012 IL App (1st) 120645 at ¶ 25, 983 N.E.2d at 1052

(quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160, 545

N.E.2d 672, 679 (1989)). A plaintiff claiming unjust enrichment under Michigan law

"must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an

inequity resulting to the plaintiff because of the retention of the benefit by the

defendant." *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729

N.W.2d 898, 904 (2006). "No person is unjustly enriched unless the retention of the

benefit would be unjust." *Buell v. Orion State Bank*, 327 Mich. 43, 56, 41 N.W.2d 472,

478 (1950). A person is unjustly enriched "if he is obligated by *equity* to make

restitution." *Tkachik v. Mandeville*, 487 Mich. 38, 49, 790 N.W.2d 260, 266 (2010).

Plaintiffs support their unjust enrichment claims with two theories. First, they

contend that Sky Union should not be permitted to retain the money it collected from

plaintiffs because these transactions constituted unlawful gambling. Second, they

contend that it would be inequitable for Sky Union to retain its profits from the sale of

gems because plaintiffs were induced to pay for gems by fraudulent representations,

namely, Sky Union's implicit guarantee that the transaction was legal and that plaintiffs

were paying for legal goods.

Neither of these theories is tenable. As explained in the preceding sections of

this opinion, none of the conduct alleged in plaintiffs' complaint is unlawful. Moreover,

plaintiffs received precisely what they sought when they gave their money to Sky Union:

gems for use in gameplay, Rolls, and in-game events. It is not inequitable, therefore,

for Sky Union to retain the money plaintiffs spent to purchase gems for use in Castle

Clash's Rolls and in-game events. The Court therefore dismisses Counts 7 and 9.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion to dismiss [dkt. no. 17]. Because it is clear that the defects in plaintiffs' claims are legal defects that cannot be avoided by repleading, *see Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted . . . if it is clear that any amendment would be futile."), the Court directs the Clerk to enter judgment in favor of defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 29, 2016